Opinion by
Head, J.,
From the lengthy correspondence between the parties, covering a period of several weeks in the summer of 1905, it appears, clearly enough, that defendants, wholesale grocers in the city of Williamsport, ordered, through plaintiffs, who were *138 jobbers or middle men in Pittsburg, a solid car of raisins of the crop of 1904, to be shipped directly from the Pacific coast to defendants. The price was to be one-half cent per pound less than the price of the new crop then nearly ready for the market. The price for the new crop is fixed each year, in the early fall, by the Raisin Growers Association of California. This order, when received by plaintiffs, was by them, with the knowledge of defendants, transmitted by wire to the packers on the coast and by them accepted, on condition that the car should be shipped before the middle of September, and with the understanding that if, at the time of shipment, the price for the new crop had not yet been fixed, an adjustment would be made so as to make the price conform to that the defendants offered to pay, viz: — one-half cent per pound less than the new price. The point agreed on for delivery to the defendant was “f. o. b. Coast.” The car was duly consigned and shipped on Septem-. ber 7. On the next day plaintiffs advised defendants of that fact and enclosed a bill covering the entire order which had included another car of assorted fruit. This bill, which plaintiffs call an “invoice” or “estimate” aggregated $2397.01 and a draft for this amount was drawn and forwarded for collection to the bank in Williamsport where it was held awaiting the arrival of the car. The prices named in this bill were those named by the western shipper and, as between him and plaintiffs, were clearly subject to adjustment when the price of the new crop should thereafter be fixed. On October 5 the price of the new crop was fixed by the Association and on the same day plaintiffs sent a circular letter to all of their customers advising them of this action and giving them the new price. It will be observed that, at this time, the car of raisins hadjiot yet reached Williamsport. The defendants, if they do not actually admit, certainly do not undertake to deny the receipt of this circular letter. On October 10 this was followed by another letter from plaintiffs enclosing a corrected or adjusted bill, at the price fixed by the contract, which aggregated $349.49 more than the original bill or estimate, and defendants were asked to substitute this for the former one, and advised that a corrected draft was being forwarded to the bank.
*139 The car arrived at Williamsport certainly not later than October 10 and after unloading it the defendants, on the eleventh, paid, at the bank, the original draft for $2397.01. The plaintiffs’ letter, containing the corrected bill, must have reached them on that same day as they reply to it under date of October 12.
The defendants having declined to pay the balance of the price clearly fixed by their contract, viz: $349.49, this action was begun for its recovery. At the trial a verdict was rendered for the plaintiffs but judgment was afterwards entered for the defendants non obstante veredicto, and this appeal followed. The defendants, conceding that they received the goods ordered, and that they have not yet paid the contract price, resist any further payment for reasons the sufficiency of which we will now briefly consider.
They contend first that by their letter of July 29 they reserved the right to cut down the quantity of raisins if the price should be too high. The material portion of that letter is as follows: “ In order to secure Santa Clara prunes, we have decided to make up a car of prunes and fill out with peaches, and also take a solid car of raisins, subject, of course, to the opening price. In case they should be too high, we may decide to cut it down, but in all probability that will not be necessary. However, we want that privilege, should such be the case.” From the letter of plaintiffs dated August 5 the defendants must have clearly understood that the order which was submitted by wire to the packers was for a solid car of raisins, at a price to be regulated by the opening price for the new crop, and that the order had been accepted on condition that shipment be made “during the first half of September,” and that delivery be made “f. o. b. Coast.” If the option mentioned in defendants’ letter was regarded as valuable to them, it should have been exercised before the completion of the contract by the other party, or in other words, before delivery. They not only failed to exercise it before delivery at the point mentioned, but down to the date of the actual arrival of the car and the unloading of it, no attempt was made to change the quantity of raisins ordered. After delivery we think it must be conceded *140 the option was valueless. Again in their letter of August 7, acknowledging receipt of the formal acceptance by the packer of the order for the car load of raisins, on the conditions already noted, the defendants say: “You may change the time of the shipment of this car until the latter part of September, in order to get the price before the shipment is made.” Whilst, upon its face, this seems to be a suggestion rather than a peremptory order, the plaintiffs at once replied that the.packers were only offering 1904 crop for shipment prior to September 15 and assigning a reason therefor; and after adverting to some other considerations tending to show that the order as accepted should be allowed to stand, ended: “Trusting you will understand the situation thoroughly, we remain, &c.” No reply whatever was made to this letter although a month elapsed before the car was shipped. Even when advised on September-8 that the car had started, the defendants, knowing that the new price had not yet been fixed and consequently that their contract, in this respect, had not yet become rigid, made no complaint of a premature shipment. The inference seems irresistible that plaintiffs’ explanation was fully satisfactory and that the date of shipment fixed in the packer’s acceptance of the order, was assented to.
Finally the defendants contend they had the right to assume that the prices named for the raisins in the first bill were the ultimate contract prices; that acting on this assumption, they had sold 300 boxes of them before the receipt of the plaintiffs’ letter of October 10 enclosing the adjusted or corrected bill; that they then offered to rescind as to the balance of the car load, and hold that portion of the goods subject to plaintiffs’ order, and this offer having been declined, they allege they have discharged every liability imposed by their contract.
Even if the defendants had been justified in refusing to receive any or all of the contents, they did in point of fact receive and presumably have sold all of them. They fail to disclose at what prices they were sold nor do they offer to render any account of the proceeds or show what loss, if any, they sustained for which they are entitled to credit as against the charge of the undeniable contract price. To assume, without proof, *141 that any loss was incurred and that it precisely balanced or exceeded the sum yet due on the contract, is to adopt a conclusion wholly without foundation in the record. But, in our judgment, the defendants were not warranted in concluding that the contract price was finally determined, beyond the right of future adjustment, by the rendition of the first bill. It will be observed that bill was rendered as early as September 8. It is not pretended by any one that, at that time, the defendants believed or had any ground for believing, the price for the 1905 crop had been promulgated. Until they had satisfied themselves from some proper source that the new price had been established, they knew their contract price remained open to adjustment according to that standard. The entire correspondence shows that both parties contemplated the possibility, if not the probability, of the very contingency that actually happened, viz: the receipt of the goods before their final price could be exactly determined under the contract. The defendants’ letter of October 12 shows they were not misled merely by the receipt of the early September bill. “Not hearing from you after the opening prices for the new goods were made, we supposed the prices at which you had billed the goods were all right,” etc. This clearly warrants the inference they had been advised of the fact of the establishment of the new price at some time later than the bill; and if they learned the fact that a new price had been fixed they could have as easily learned what it was and this Would have determined, without hearing from the plaintiffs, what the contract price must necessarily be. They do not state how they learned the new price had been fixed and in this connection it is important to recall they do not deny the receipt of the plaintiffs’ circular letter of October 5 giving full information as to the new prices then just announced. The defendant firm consisted of Thrall and Long. At the time of the trial the latter was dead. On the subject of the circular letter, Thrall testified as follows: — " Q. Do you mean to say that the letter was not received by F. B. Thrall & Co.? A. No, sir; I don’t mean to say the letter did not come there. It didn’t come to my attention. Q. You, of course, received hundreds of letters at that time to which your atten *142 tion was not called? A. My attention was always called to letters of importance. Q. Who called your attention to them? A. Mr. Long. Q. He is dead at the present time? A. Yes, sir. Q. It was he who received this letter? A. Yes, sir. ”
Thus it would appear that the false position taken by the defendants rested not on any failure of duty on the part of the plaintiffs, but on the fact that they themselves overlooked or failed to note the information contained in the circular letter of October 5. The correspondence shows, as we view it, every element of a contract between the 'parties, which has been fairly and fully performed by the plaintiffs according to its terms; but the evidence fails to disclose any sufficient reason why they should lose a considerable part of the contract price. The learned court' below was right therefore in directing a verdict for the plaintiffs, but was led into error in refusing to enter judgment thereon.
Judgment reversed and judgment is now directed to be entered in favor of the plaintiffs on the verdict; the costs of this appeal to be paid by appellees.